UNITED STATES DISTRICT COURT
FOR THE
DISTIRCT OF MAINE

| | |
|---|---|
| EMILY E. CASSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CENTRAL MAINE HEALTHCARE | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT**

NOW COMES Plaintiff, Emily Cass, and hereby complains against Central Maine Healthcare as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Emily E. Cass brings this action against Central Maine Healthcare ("CMH" or "Defendant") for pregnancy discrimination, failure to accommodate, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("Title VII"), 42 U.S.C. § 2000e et seq.; the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg et seq.; the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 et seq.; and the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4551 et seq.

2. Ms. Cass worked as a per diem radiologic technologist in Defendant's cardiac catheterization laboratory. While pregnant, she developed pregnancy-related medical conditions and obtained medical restrictions limiting the time she could spend wearing a lead apron,

requiring rest and restroom breaks, and prohibiting lifting and transferring patients. Defendant acknowledged the restrictions but failed to implement any plan to honor them and continued to assign Ms. Cass to procedures that kept her in lead well beyond her limits.

3. On July 9, 2025, after being kept in lead beyond her medical restriction, Ms. Cass suffered a serious pregnancy-related medical episode and was taken to the emergency department. The morning after she reported that episode to Employee Health, Defendant deemed her a "risk" and a "liability" and, that same day, ended her employment. Defendant took these actions because of Ms. Cass's pregnancy, her pregnancy-related limitations, and her requests for and use of reasonable accommodations.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, specifically Title VII, 42 U.S.C. § 2000e-5(f); the PWFA, 42 U.S.C. § 2000gg-2; and the ADA, 42 U.S.C. § 12117.

5. This Court has supplemental jurisdiction over Plaintiff's related claims arising under the Maine Human Rights Act pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as Plaintiff's federal claims.

6. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the unlawful employment practices alleged in this Complaint were committed in this district, the relevant employment records are maintained in this district, and Defendant maintains its principal place of business in this district.

## CONDITIONS PRECEDENT

7. On or about January 15, 2026, Ms. Cass timely filed a Charge of Discrimination (Charge No. 523-2025-03809) alleging discrimination based on pregnancy, sex, and disability, failure to accommodate, and retaliation, which was dual-filed with the Equal Employment Opportunity Commission ("EEOC") and the Maine Human Rights Commission ("MHRC").

8. On or about May 26, 2026, the EEOC issued Ms. Cass a Notice of Right to Sue, and this Complaint is filed within 90 days of her receipt of that Notice. Ms. Cass has satisfied all conditions precedent and exhausted all administrative remedies required to maintain this action under Title VII, the PWFA, and the ADA.

## PARTIES

9. Plaintiff Emily E. Cass is a resident of Oxford County, Maine. At all relevant times, Ms. Cass was an "employee" within the meaning of Title VII, the PWFA, the ADA, and the MHRA, and a "qualified employee" and "qualified individual" within the meaning of those statutes.

10. Defendant Central Maine Healthcare is an integrated health care system organized and operating in the State of Maine, with its principal place of business located at 300 Main Street, Lewiston, Maine. Defendant operates facilities including Central Maine Medical Center, Bridgton Hospital, Rumford Hospital, and the Central Maine Heart and Vascular Institute, and serves more than 40,000 people in central, western, and mid-coast Maine.

11. At all relevant times, Defendant employed more than fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year

and was an "employer" and "covered entity" within the meaning of Title VII, the PWFA, the ADA, and the MHRA.

## FACTS

12. Defendant hired Ms. Cass on or about July 29, 2024 as a per diem radiologic technologist assigned to the cardiac catheterization laboratory ("cath lab") at the Central Maine Heart and Vascular Institute.

13. In her role, Ms. Cass assisted cardiologists and other medical staff during catheterization procedures, including scrubbing in for cases, which required her to stand and wear a heavy lead apron for extended periods. Her direct supervisor was Autumn Grimm, Director of Cardiovascular Invasive Services.

14. Ms. Cass was qualified for her position and performed her job competently. Her work quality and professional competence were not compromised by her pregnancy.

15. In or about the winter of 2025, Ms. Cass notified Defendant, including Ms. Grimm, that she was pregnant, with a due date in late August 2025.

16. As her pregnancy advanced, Ms. Cass developed pregnancy-related medical conditions, including anemia, palpitations and tachycardia, lightheadedness, and episodes of feeling faint, which were aggravated by standing in a lead apron for prolonged periods.

17. On or about June 9, 2025, Ms. Cass informed Ms. Grimm that she was anemic and that her obstetrician had recommended limiting the duration of her cases to reduce physical

strain. Rather than accommodating her, Ms. Grimm gave Ms. Cass a hard time and demanded a doctor's note.

18. On or about June 10, 2025, Ms. Cass was seen by her physician, who documented that Ms. Cass was struggling at work, standing in lead for hours, and experiencing palpitations, lightheadedness, and faintness, and that she needed work guidelines.

19. On or about June 20, 2025, Ms. Cass provided Defendant with a written medical restriction requiring that, due to her advancing pregnancy, she (a) limit her lead-wearing time to no longer than one hour per case before being allowed a break to rest her feet and back; (b) be allowed bathroom breaks every hour, or as needed, to maintain adequate hydration; and (c) not lift or transfer any patients.

20. The limitations set out in Ms. Cass's June 20, 2025 restriction were physical conditions related to, affected by, and arising out of her pregnancy, and Ms. Cass communicated them to Defendant. The accommodations she requested—periodic breaks from wearing lead, rest and restroom breaks, and relief from lifting and transferring patients—were reasonable and would not have imposed an undue hardship on Defendant's operations.

21. Defendant acknowledged receipt of Ms. Cass's restriction but did not approve, implement, or take any steps to ensure that it would be followed. Defendant created no written accommodation plan, made no staffing adjustment, assigned no monitor or circulator role, provided no supervisor instruction, and did not engage in any interactive process to determine how the restriction would be honored.

22. A "monitor" position existed in the cath lab in which Ms. Cass could have worked seated behind a lead barrier, consistent with her restriction. Defendant did not prioritize training or assigning Ms. Cass to that role, instead leaving her to scrub or circulate in lead for long periods as her pregnancy advanced.

23. Defendant continued to assign Ms. Cass to scrub multiple back-to-back cases and gave her difficulty when she requested breaks, treating her requests less favorably than it treated the break requests of non-pregnant employees.

24. On more than one occasion, members of Defendant's management stated to other staff that Ms. Cass "wasn't able to properly do her job" because she was pregnant and that, because she could not do her job completely, she "should just go home and do nothing at all."

25. On or about June 20, 2025, Ms. Cass reported that she had been on her feet since 7:00 a.m., with four hours of that time spent in lead, without breaks to use the restroom or drink water, and that she was cramping badly but feared her manager would be angry if she asked for a break.

26. Under the mounting physical strain of working without accommodation, and believing she was being forced to choose between her job and her health and the health of her pregnancy, Ms. Cass gave notice of resignation on or about June 30 to July 1, 2025, with an anticipated last day of July 24, 2025. In doing so, she expressed a continued willingness to work through her notice period if Defendant would prioritize monitor and circulating assignments compatible with her restrictions.

27. On July 9, 2025, Ms. Cass was assigned to scrub a case that continued well beyond the one-hour limit set by her medical restriction. After one to two hours in lead, she became warm, faint, hungry, dehydrated, shaky, and sweaty, and her heart rate reached approximately 130 beats per minute. She notified the physician, who directed staff to assist her out of lead. Ms. Cass went to the emergency department, where the cause of the episode was determined to be exhaustion and dehydration.

28. On the morning of July 10, 2025, at approximately 9:00 a.m., Ms. Cass submitted an incident report to Employee Health concerning the July 9, 2025 episode.

29. Later that same day, at approximately 4:15 p.m., after management reviewed Ms. Cass's Employee Health report and consulted Human Resources, Ms. Grimm called Ms. Cass into her office and informed her that, because she was considered a "risk" to the department and for the safety of patients, July 10, 2025 would be her last day. Ms. Cass understood from her manager and Human Resources that she was being terminated and told that she was a "liability."

30. Defendant did not conduct any individualized assessment, based on reasonable medical judgment, of whether Ms. Cass could safely perform her job with reasonable accommodation before removing her from the workplace. Instead, Defendant relied on generalized assertions that Ms. Cass was a "risk," a "liability," or a "safety" concern.

31. Defendant represented that it would pay Ms. Cass through July 24, 2025. Upon information and belief, Defendant did not pay Ms. Cass through that date as represented.

32. Throughout this period, Ms. Cass suffered substantial physical pain and emotional distress, including anxiety, dread, emotional exhaustion, and a significant decline in her emotional well-being, as a result of Defendant's treatment of her.

**COUNT I**

**Pregnancy Discrimination in Violation of Title VII of the Civil Rights Act (42 U.S.C. § 2000e et seq.), as Amended by the Pregnancy Discrimination Act**

33. Ms. Cass repeats and realleges each of the allegations contained in paragraphs 1-32 of this complaint as if fully set forth herein.

34. Title VII prohibits discrimination against an individual with respect to the terms, conditions, and privileges of employment because of sex, which includes discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions.

35. Ms. Cass was a member of a protected class because she was pregnant, and she was qualified for and satisfactorily performing her position.

36. Defendant discriminated against Ms. Cass because of her pregnancy by, among other things, failing to accommodate her pregnancy-related restrictions, subjecting her to derogatory pregnancy-based comments, treating her less favorably than non-pregnant employees, and ending her employment.

37. Defendant accommodated other employees who were similar to Ms. Cass in their ability or inability to work but refused to provide Ms. Cass a comparable accommodation, imposing a significant burden on her because of her pregnancy that was not justified by any sufficiently strong, legitimate, nondiscriminatory reason.

38. Defendant's stated reasons for its actions, including that Ms. Cass was a "risk" or "liability," are pretextual and give rise to an inference of intentional pregnancy discrimination.

39. As a direct and proximate result of Defendant's unlawful discrimination, Ms. Cass has suffered damages, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action.

40. Defendant intentionally violated Ms. Cass's rights under Title VII with malice or reckless indifference to her federally protected rights and is therefore liable for punitive damages.

**COUNT II**

**Retaliation in Violation of Title VII of the Civil Rights Act (42 U.S.C. § 2000e et seq.), as Amended by the Pregnancy Discrimination Act**

41. Ms. Cass repeats and realleges each of the allegations contained in paragraphs 1-40 of this complaint as if fully set forth herein.

42. Ms. Cass engaged in protected activity, including requesting accommodations for her pregnancy-related limitations, opposing Defendant's failure to accommodate and its discriminatory treatment of her, and reporting the July 9, 2025 workplace incident to Employee Health.

43. Defendant subjected Ms. Cass to a materially adverse action, including ending her employment on July 10, 2025, the same day it reviewed her Employee Health report.

44. There is a causal connection between Ms. Cass's protected activity and the adverse action, as shown by, among other things, the close temporal proximity between her report and her removal and Defendant's stated reliance on that report and on generalized "risk" and "safety" concerns.

45. Defendant's stated reasons for its actions are pretextual, and Defendant acted with retaliatory animus.

46. As a direct and proximate result of Defendant's unlawful retaliation, Ms. Cass has suffered damages, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action. Defendant is liable for punitive damages for its intentional violation of Ms. Cass's rights with malice or reckless indifference.

**COUNT III**

**Failure to Accommodate in Violation of the Pregnant Workers Fairness Act (42 U.S.C. § 2000gg et seq.)**

47. Ms. Cass repeats and realleges each of the allegations contained in paragraphs 1-46 of this complaint as if fully set forth herein.

48. At all relevant times, Ms. Cass was a qualified employee with known limitations related to her pregnancy, which she communicated to Defendant, including through her June 20, 2025 medical restriction.

49. The accommodations Ms. Cass needed—limiting her time in a lead apron with periodic breaks to rest, restroom and hydration breaks as needed, and relief from lifting and transferring patients—were reasonable accommodations that would not have imposed an undue

hardship on Defendant. Allowing an employee to take additional restroom breaks and to keep and drink water as needed are accommodations that will, in virtually all cases, be found reasonable and not an undue hardship.

50. Defendant committed an unlawful employment practice under the PWFA by failing to make reasonable accommodations to Ms. Cass's known limitations, by unnecessarily delaying and failing to implement any accommodation after acknowledging her restriction, by failing to engage in the interactive process, and by requiring her to continue working without accommodation until she became symptomatic.

51. Defendant cannot demonstrate that providing the requested accommodations would have imposed an undue hardship on the operation of its business.

52. As a direct and proximate result of Defendant's violation of the PWFA, Ms. Cass has suffered damages, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action. Defendant is liable for punitive damages for its intentional violation of Ms. Cass's rights with malice or reckless indifference.

**COUNT IV**

**Retaliation and Interference in Violation of the Pregnant Workers Fairness Act (42 U.S.C. § 2000gg-2(f))**

53. Ms. Cass repeats and realleges each of the allegations contained in paragraphs 1-52 of this complaint as if fully set forth herein.

54. Ms. Cass engaged in protected activity under the PWFA, including requesting and seeking to use reasonable accommodations for her known pregnancy-related limitations and opposing Defendant's failure to provide them.

55. Defendant retaliated against Ms. Cass, and coerced, intimidated, threatened, and interfered with her exercise of rights protected by the PWFA, by ending her employment on account of her requests for and use of accommodations and her related pregnancy limitations.

56. There is a causal connection between Ms. Cass's protected activity and Defendant's adverse actions.

57. As a direct and proximate result of Defendant's violation of the PWFA, Ms. Cass has suffered damages, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action, and Defendant is liable for punitive damages.

**COUNT V**

**Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)**

58. Ms. Cass repeats and realleges each of the allegations contained in paragraphs 1-56 of this complaint as if fully set forth herein.

59. Ms. Cass's pregnancy-related conditions, including anemia, palpitations and tachycardia, near-syncope, and dehydration, were physical impairments that substantially limited one or more major life activities. Ms. Cass had a record of such impairments, and Defendant regarded her as having such impairments.

60. Ms. Cass was a qualified individual who could perform the essential functions of her position with or without reasonable accommodation.

61. Defendant knew of Ms. Cass's disability and failed to provide a reasonable accommodation and to engage in the interactive process required by the ADA, despite her sufficiently direct and specific requests linked to her condition.

62. Defendant discriminated against Ms. Cass because of her disability, and because it regarded her as disabled, by removing her from the workplace and ending her employment based on generalized assertions that she was a "risk," a "liability," and a "safety" concern.

63. To the extent Defendant asserts that Ms. Cass posed a direct threat, that defense fails because Defendant did not conduct the individualized assessment, based on reasonable medical judgment and the best available objective evidence, that the ADA requires, and because any risk could have been eliminated or reduced by reasonable accommodation.

64. Defendant cannot demonstrate that accommodating Ms. Cass would have imposed an undue hardship on the operation of its business.

65. As a direct and proximate result of Defendant's violation of the ADA, Ms. Cass has suffered damages, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action. Defendant is liable for punitive damages for its intentional violation of Ms. Cass's rights with malice or reckless indifference.

**COUNT VI**

**Retaliation in Violation of the Americans with Disabilities Act (42 U.S.C. § 12203)**

66. Ms. Cass repeats and realleges each of the allegations contained in paragraphs 1-65 of this complaint as if fully set forth herein.

67. Ms. Cass engaged in protected activity under the ADA, including requesting reasonable accommodations for her disability and opposing Defendant's failure to accommodate her.

68. Defendant subjected Ms. Cass to a materially adverse action by ending her employment, and there is a causal connection between her protected activity and that adverse action, as shown by the close temporal proximity and Defendant's stated reasons.

69. As a direct and proximate result of Defendant's unlawful retaliation, Ms. Cass has suffered damages, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action, and Defendant is liable for punitive damages.

## COUNT VII

## Pregnancy and Sex Discrimination, Disability Discrimination, and Failure to Accommodate in Violation of the Maine Human Rights Act (5 M.R.S. §§ 4572, 4572-A)

70. Ms. Cass repeats and realleges each of the allegations contained in paragraphs 1-69 of this complaint as if fully set forth herein.

71. Under the Maine Human Rights Act, "sex" includes pregnancy and medical conditions that result from pregnancy, and it is unlawful for an employer to treat a pregnant person who is able to work differently from other persons who are able to work.

72. Defendant discriminated against Ms. Cass because of her sex and pregnancy, and because of her disability, in the terms, conditions, and privileges of her employment, and in discharging her, in violation of 5 M.R.S. § 4572.

73. Ms. Cass had a pregnancy-related condition and requested reasonable accommodations. Defendant committed unlawful employment discrimination under 5 M.R.S. § 4572-A(2-A) by failing, upon request, to provide reasonable accommodations—including more frequent or longer breaks, temporary modification of her duties, relief from lifting requirements, and transfer to less strenuous or hazardous work—without demonstrating undue hardship.

74. Defendant also failed to make reasonable accommodations to Ms. Cass's known physical limitations as a qualified individual with a disability, in violation of 5 M.R.S. § 4572(2) and § 4553.

75. Defendant cannot demonstrate that the requested accommodations would have imposed an undue hardship on the operation of its business, and reasonable accommodations for a pregnancy-related condition are not additional benefits.

76. As a direct and proximate result of Defendant's violations of the MHRA, Ms. Cass has suffered damages, and she is entitled to all remedies available under 5 M.R.S. § 4613, including back pay, compensatory and punitive damages or civil penal damages, and attorney's fees and costs under 5 M.R.S. § 4614.

**COUNT VIII**

**Retaliation in Violation of the Maine Human Rights Act (5 M.R.S. § 4633)**

77. Ms. Cass repeats and realleges each of the allegations contained in paragraphs 1-76 of this complaint as if fully set forth herein.

78. Ms. Cass engaged in activity protected by the Maine Human Rights Act, including requesting accommodations for her pregnancy-related and disabling conditions, opposing Defendant's failure to accommodate and its discriminatory treatment, and reporting the July 9, 2025 incident.

79. Defendant retaliated against Ms. Cass, and coerced, intimidated, threatened, and interfered with her exercise of rights protected by the Act, by ending her employment because of her protected activity, in violation of 5 M.R.S. § 4633.

80. As a direct and proximate result of Defendant's unlawful retaliation, Ms. Cass has suffered damages and is entitled to all remedies available under the Maine Human Rights Act, including back pay, compensatory and punitive damages or civil penal damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Emily E. Cass respectfully requests that this Court enter judgment in her favor and against Defendant and grant the following relief:

1. Award Ms. Cass back pay and lost benefits, plus prejudgment and postjudgment interest;
2. Order Defendant to reinstate Ms. Cass to a comparable position or, in lieu of reinstatement, award her front pay and benefits;
3. Award Ms. Cass compensatory damages, including for emotional distress and other nonpecuniary losses;
4. Award Ms. Cass punitive damages under Title VII, the PWFA, and the ADA, and civil penal, compensatory, and punitive damages under the Maine Human Rights Act;
5. Enter injunctive and equitable relief, including an order prohibiting Defendant from engaging in further discrimination and retaliation and requiring appropriate training and policy reforms;
6. Award Ms. Cass reasonable attorney's fees, expert fees, and costs incurred in connection with this action; and
7. Grant Ms. Cass such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 24, 2026

*/s/ Sally Morris*______________________

Sally A. Morris, Bar No. 8479
Sally A. Morris, Attorney at Law, LLC
Auburn Hall, Suite 212
60 Pineland Drive
New Gloucester, ME 04260
(207) 558-6161
smorris@morrisemploymentlaw.com

Attorney for Plaintiff Emily E. Cass